17, 0253, the people of the state of Illinois, advocate by Thomas Serrano, v. Clarence Hopkins, defendant by honor, Brian Collett. Mr. Collett. May it please the court. Good morning, your honors, counsel. My name is Brian Collett, and I'm the assistant appellate defender with the Office of the State Appellate Defender, and I represent Mr. Clarence Hopkins, the defendant in this criminal matter. This case comes to this court after the second stage dismissal of the defendant's post-conviction petition, in which he claimed that appellate counsel was ineffective for failing to raise a speedy trial issue. The trial court dismissed the petition, finding that it was barred on race judicata grounds. This finding was clearly wrong, and the state does not argue in support of this ruling. What is at issue here, then, is a statutory interpretation issue. Whether Mr. Hopkins was subject to Subsection A of the Speedy Trial Statute, or whether he was required to file a demand in accordance with the Intrastate Detainers Act, which is the Act. The facts here, they were presented by stipulation. Based on a Whiteside County warrant, based on Whiteside County offenses, a Whiteside County warrant was issued for defendant's arrest was issued on July 1st. You want us to reverse Lykes, right? I'm sorry, Your Honor? You want us to reverse Lykes? Oh, yes. Yes, that's the crux of the state's argument here, and we acknowledge that Lykes is, you know, it's right on point. Lykes, in that case, in this case, a warrant was issued for the Whiteside County offense. He's taken into custody on this warrant. He's kept in custody on the Whiteside County warrant per the prosecutor's stipulation, and then he's transferred to the DOC custody based on their warrant. In Lykes, he was arrested on a Will County warrant, and he was kept there for six days, I believe, and then he was transferred to DOC custody on their MSR violation warrant. And factually, they're both consistent. They're both. But Mr. Hopkins contends first that Lykes was wrongly decided in the first place and that subsequent legislation has rendered it inact. First, he maintains... Well, for one clarification, we can't reverse anything except a trial court. We don't have to follow you. We can... You can try to convince us not to follow, but only the Supreme Court can reverse an appellate. I've got to correct myself. We can just have another opinion in our third district saying the opposite, which happens in third districts. It does, and it happened in Lykes. Lykes said it refused to rely on Birchfield. Birchfield was issued a couple years earlier. This is the same panel, so it does happen. So, again, moving back to Lykes. Lykes, in the first place, it was wrongly decided. The case... In determining whether Subsection A should apply or whether the act should apply, it relied on the case of Freeland, which is a second district case. Now, in Freeland, the defendant was taken into custody on both the county warrant and the NSRR violation, but then he supplied bond on that county warrant. So he was no longer in custody. He was no longer subject to Subsection A. So Freeland is inapplicable to the situation that's before this court and the one that was before the court in Lykes. And then, subsequently, in 2007, the legislature amended the speedy trial statute. It enacted a... passed legislation adding a sentence to Subsection A, which stated that a person who is in custody... who is in custody on a county... who is in on a county offense but supplies bond and is also taken into custody on an NSRR violation is not subject to Subsection A, which implicitly states that a person who is in custody, who has not supplied bond and is in custody on an NSRR violation is subject to Subsection A. You know, theoretically, how can the lawyer be ineffective if there is the Lykes case out there? Because subsequent legislation caused... it completely undermines the case. The case is no longer good law given subsequent legislation. There's another 2009 amendment to the Interstate Detainers Act which says that a person who's on MSR is no longer deemed to be committed to the Department of Corrections. Now... But your client wasn't on MSR. He was in jail for violating his MSR, wasn't he? Well, no. He was on MSR when he committed the offense. He was on MSR when he was taken into custody on this offense. So he's still on MSR. And according to the 2009 statute, the amendment to the statute, he is not committed to the Department of Corrections until his MSR is violated, until he's deemed to have violated his MSR by a Prisoner Review Board. So because he's on MSR, he's no longer subject to commitment in the Department of Corrections, that undermines the second aspect of Lykes Holden. Lykes first relied on Freeland to say Section A doesn't apply, and then it relied on the fact that what it termed was the defendant... It said the defendant was committed to the Department of Corrections. But because he's on MSR, he's not committed to the Department of Corrections. So Lykes is no longer... It's no longer good law, and this Court should simply not follow it. Now, the defendant also acknowledges that Woodell discussed Lykes, but it did not endorse Lykes. What it did was it said that the appellate court was wrong in relying on Lykes for the proposition that every time you change a category, you have to file a new speedy trial demand. That was the appellate court holding it. And the Supreme Court said, well, that's wrong. And then they analyzed Lykes and said, this is what Lykes held. The appellate court, you misinterpreted Lykes. But then the Woodell court did not rely on Lykes in its holding because it was not called upon to discuss the interplay of Subsection A and the Interstate Containers Act. But it was called upon there. I'm sorry, Your Honor. It didn't overturn it. It did not overturn it because it wasn't deciding that issue. That wasn't the issue before the court. The issue is whether Ms. Woodell's speedy trial demand under the act survived her release from the Department of Corrections. That was the issue before the Woodell court. It determined that issue, but it didn't have to decide Lykes. It wasn't there to decide Lykes. And even if it was to decide whether Lykes should be followed, there's three reasons why it would not have. Lykes is inconsistent with the Woodell court's analysis on three different points. First, the Woodell court said that under Subsection A, your demand is automatic. It's filed as soon as you're taken into custody. And it doesn't change. That was the holding of the court in that case. It doesn't change when you change classification. Now, the second part of it is that the Woodell court was concerned with what it termed was stacking. And in that case, Woodell, if she would have had to file a second demand for trial after she was released from DOC custody, she could be in custody for 320 days without having to be tried. If Lykes holds true, then stacking occurs. And that was contrary to the analysis in the Woodell court. If the defendant is taken into custody, and Subsection A applies, he could be held for 120 days in county jail without the MSR warrant even being issued, even being executed. Then on day 119, the MSR warrant could be executed. He could be taken into custody, Department of Corrections. And then he could be held there for another 160 days after he files demand. So that would allow for stacking in the Lykes analysis in this case. That's what it would allow for. And, of course, the Woodell court said the legislature did not intend to allow these terms to be stacked. So it would have run counter to its analysis to actually endorse Lykes in the Woodell case. And one further point on that is that Lykes, it distinguished an Illinois Supreme Court case, which was Patheo. In Patheo, the court refused to divide up different periods of custody, county custody versus DOC custody. Now, granted that was before the Interstate Detainers Act. But if Woodell was endorsing Lykes, it would stand to reason that Woodell would have to consider Patheo, a case from its own court that Lykes found distinguishable, that Lykes refused to rely upon. So if the Woodell court was endorsing Lykes, it would have had to have addressed Patheo. It never did. So there's no – it did not endorse Lykes, and it would not have endorsed Lykes, given the analysis that it made, particularly with regard to stacking. Do we know when he's transferred on December 2nd? Is he MSR again, just released? Everything's done when it comes to the White Slate County Jail? Do we know that, what his status is with DOC? We don't know specifically, but that's the implication. That's how we've approached this case. I believe that that's what occurred. But we don't know one way or another. And there's two final points that I would like to address. And one of them, it was – either of them were ever addressed in Lykes. If White Slate County was the – issued this warrant, he was picked up on the White Slate County warrant. That's all by stipulation. The White Slate County prosecuting authority knew or should have known where he was. Now, the purpose of the Interstate Detainers Act is to allow – to let the county know where the defendant is, because he could be anywhere in the DOC custody. To let the state – prosecutor know where he is, write him in so they could try him within 160 days. Here, White Slate County knew where he was or should have known where he was. It was their warrant that he was arrested on. There's no reason not to bring him to White Slate County and try him within 120 days. And then secondly, Lykes – if Lykes is allowed to stand, it would raise serious statutory and constitutional questions. If he's – if the criminal defendant is brought into custody and then he's just simply transferred over to MSR and he has no speedy trial right under subsection A, he could be denied a preliminary hearing and the right to counsel on those offenses for which he was originally charged until he's either – his demand is run under the Speedy Trial Act or under the Interstate Detainers Act or until his MSR is finished. And that's certainly not what the legislature intended by this Interstate Detainers Act. What this Interstate Detainers Act is designed to do is if a criminal defendant is convicted in one county and perhaps he's committed other offenses in other counties where there's charges pending or maybe somebody hasn't been able to identify him where he's not brought in and tried on those other county charges. He's convicted in one county. He's sentenced to the Department of Corrections. He wants to get all this stuff cleared up in these other counties. So he notifies the prosecuting authorities in Moultrie County, which is the Waddell case, or whatever county it is, hey, I'm over here. This is where I'm at. I want to be tried on these charges. I want to get these charges taken care of before I'm released from DOC custody. That's what the Interstate Detainers Act is designed to do. It's not designed to allow the prosecuting authority to bring a defendant into custody and then transfer him to DOC custody and give them extra time in which to try the case. It's simply not what the legislature intended. Accordingly, Your Honors, Mr. Hopkins respectfully requests that this court, in all actuality, reverse his conviction based on the speedy trial violation here. Thank you. Thank you, Mr. Gillett. Mr. Ferraro. May it please the Court. Good afternoon, Your Honors. This case has two aspects. First is the ineffective assistance of appellate counsel from the 1st District to OSAD, who had represented the defendant on direct appeal. The second is whether or not the Lice case is no longer standing. Because appellate counsel does not have to advocate every possible argument that is available. He has to exercise his professional judgment to determine whether or not an argument should be raised. In this case, there was a stipulation that defendant was in custody of DOC from August 2nd through December 2nd of 2011. Plus, there was the Lice case, Doc Martin, King, Waddell, which favorably talked about Lice. All available to appellate counsel to make his interpretation as whether or not to bring the argument. It is our position that it was not patently obvious mistake to not make the argument that defense counsel now. It's a complex issue that it's all right for them to sort of gloss over and think, ah, if I got it right. Well, as long as there's a case law that supports the position. You know, there's 37 pages of appellant brief arguing for a change in the law. I don't think that there's a requirement that appellant counsel has to, in every instance, make that argument. No, but if the law had already changed, I think that is another argument. Which means? Would they then, the laws change and Lice is no longer good law because it's statutory change. And it is the gist of the argument that's made by the petitioner. Is counsel then relieved of their allegation because it's kind of a complex issue? Or they say, well, it's going away. Our position is that since there is case law and interpreting the counsel even says Lice is right on point. So somebody looking at that would make that determination. I think that's appropriate. But regardless, our other position is that everything counsel is arguing is incorrect. First off, the changes to the speedy trial statute simply means that speedy trial doesn't apply to a defendant who is, has his predicate bond revoked or is MSR revoked. It doesn't mean that the Interstate Detainer Act doesn't apply anymore. As far as the Interstate Detainer Act, the additional language there, it didn't change the remaining portions of the corrections code that defines what parole is, which is the release of a defendant from custody of the Department of Corrections. Also, it doesn't change the definition of commitment, which is a judicial determination that sends a defendant to custody of the DOC. What it only applies, well, in this case, the defendant had been out on MSR and he was found to have at least had a violation of MSR to warrant him being taken into custody of DOC. He was transferred to custody of DOC. That was the stipulation. And you can't now say, well, he wasn't in custody. The argument in the respondent's reply brief is, well, they just meant physical custody. That's not what they stipulated to. They stipulated to custody of the defendant. And if the defendant is in custody, he is, he, the Interstate Detainer Act applies. Under defendant's interpretation of Waddell, once a defendant is subject to subsection A of the, of the speedy trial act, if he goes out on bond, subsection B never applies because he's locked in to whichever one is, he first is made available. Also, I point out to the Court the discussion in Waddell about likes and, particularly likes and freedom. The, and this is in pages 177, 178 of Waddell. In likes and, okay, according to the first time the defendant could make a demand, make a demand, and that's the key language in Waddell, make a demand was after he was released on bond, at which point subsection B of the speedy trial act controlled. In likes and freeland, the defendants were initially in custody for the charged offenses, but only made speedy trial demands after being transferred to DOC for violating terms of their mandatory supervised release. Releases on unrelated offenses, at that point, they fell within the interstate statute and 160-day demand had to be filed. None of these cases were properly speedy, speedy amount of demands rendered ineffective by defendant's subsequent changes in status. There is, they are discussing likes. If they wanted to overrule likes or say there was no other good law, they could have said it right there, but they didn't. As far as arguing a stacking, in order to avoid stacking, all the defendant has to do is apply for, under the Interstate Detainer Act, to get his 160 days and have subsection B of the speedy trial act apply. Then you get your credit. As far as Whiteside County being aware, point out in People v. King, the defendant was in the Macon County Jail and was under a parole violation hold the whole time. And they said that he was in custody of DOC and, therefore, the Interstate Detainer Act applied. So the fact that Whiteside County may or may not have known that he was there doesn't make any difference under King. So all of these arguments are simply without merit. And counsel, original telecounsel, was clearly aware of these cases and these holdings and wasn't ineffective in not raising these issues. So for all those reasons, if there's no other questions, we would ask that this Court affirm the trial judge's dismissal of the post-conviction petition. MR. RAUM. MR. COATS.  MR. COATS.  MR. COATS. MR. COATS. MR. COATS. I'd like to start off with a question that Justice O'Brien asked. And these are – appellate counsel should have raised this issue. There are specific statutory changes that apply to call likes on the question. And I'd like to look at those statutes real quick. This is a speedy trial statute. It says, and I'm going to quote it, provisions of this subsection A do not apply to a person on bail or in cognizance for an offense, but who is in custody for a violation of his or her parole after parole release or mandatory supervised release for another offense. This is saying that if you're taken into custody, you bond out, you're still there on an MSR hold, you're not subject to subsection A. But implicitly, without providing that if you're just – oh, the legislature, if they wanted this to apply to everybody, they could have left out whether he was on bond or not. This also – it implicitly shows that the legislator intended that somebody who's in custody, who is not on bond, who is also in custody on an MSR charge, is still subject to subsection A. That was – that's a 2007 amendment, and it was clearly in play by the time of the Defendant's Appeal. This is a 2011 charge. And then secondly, as far as the Act, the changes to the Act, those are 2009. And the State, before this Court, it argues that, well, the Act didn't change the definition of parole. It didn't change the definition of commitment. That was not argued in the briefs. What they argued in the briefs was that this Act was enacted to change the Post-Conviction Hearing Act. But clearly, it applies only to the Interstate Detainers Act. If it applied to the Post-Conviction Hearing Act, they would have put it in the Post-Conviction Hearing Act. And what this change does is originally – and this is cases that are cited within Mike's – the Department of Corrections, the Unified Code of Corrections, does define commitment. It defines discharge. And it says that a commitment comes – a person is committed after their sentence, found guilty and sentenced, after they're convicted. And then it says discharge is that period of mandatory supervised release. There's counsel commentary in the Smith-Hurd annotations that said a person is committed until discharged from MSR. But with this 2009 amendment, it says that a person who is on MSR is no longer committed to the Department of Corrections. It wipes out that Smith-Hurd counsel commentary. They're not changing the law. What they're changing is they're correcting that commentary. They're saying that a person who's on mandatory supervised release is no longer committed to the Department of Corrections. These people – these individuals are on mandatory supervised release when they're picked up. But they – well, but they're – but when they're sitting in a jail cell, they're not on mandatory supervised release. They are still, Your Honor. They're still on MSR until that MSR is violated, until they go before – If they're in the jail cell for violating their MSR, then they're not on MSR. Well, they're in jail. I mean, it's a colloquialism. He's in on an MSR violation. What they're in for is an allegation of a mandatory supervised release violation. That allegation is not founded until the defendant goes through – goes to the prisoner review board and they determine that he has violated his MSR. Then he is, per statute, he's recommitted to the Department of Corrections. So while a person has MSR on MSR, he's not committed to the Department of Corrections until the prisoner review board determines that he is to be recommitted. And so – so as I understand, you need the finding before you can say he's in a different category, even though he's sitting in the jail. That's our position, given this 2009 amendment to the statute. Yes, Your Honor. Because what the DOC could do is they could extend his MSR or they could just say, you know, there's no violation here. They could turn around and let him go. So it doesn't make a whole lot of sense for him to have to file a speedy trial demand as soon as he's taken into custody, before he's actually been recommitted, before he's been found to violate that MSR, when they could just release him anyway. And then that demand doesn't do him any good. Well, simplistically, he's in the jail, right? I'm sorry, Your Honor? Simplistically, he's in the jail. He's being held. Sure. He's in custody. And there's a difference between custody and commitment. In the stipulation, counsel was not stipulating that he was, you know, within the Department of Corrections, that the Interstate Detainers Act applied, that he was not committed – that he was committed to the Department of Corrections. Because that's what the Interstate Detainers Act requires, is commitment, not custody. Custody is the statute. The Act requires commitment. Counsel, one more question. Thank you. Well, let me ask you something. Absolutely. Boil the issue down to this for us to decide whether somebody sitting in a jail cell on – for being charged with an – and he's in jail because of an MSR violation or alleged MSR. Is that person, for purposes of the Interstate Detainer Act, on MSR or not? I think that's an important consideration. But I think what this case boils down to is whether he's subject to subsection A. He's subject to subsection A when he's taken into custody for that Whiteside County offense, on that Whiteside County warrant. Not for an MSR violation. He's taken into custody on that MSR – on that Whiteside County warrant. He's subject to subsection A. His demand is automatic. It doesn't change. And with the statute, the amendment – the 2000 amendments that change the subsection A of the statute that says that, you know, persons who are on bond and in custody on MSR violation are no longer subject to this subsection A, it clearly implies the legislator had intended all along that persons who are in custody, not on bond, and in custody on MSR violation are subject to subsection A. So it starts there. And then this Court can determine commitment, if it needs to go further. Counsel's time is up. Can I thank you, Your Honors? All right. Thank you, Mr. Cohen. Mr. Arado, likewise, this matter will be taken under advisement. Written disposition will be issued.